## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Newman McIntosh & Hennessey, LLP**
7315 Wisconsin Avenue,700 East
Bethesda, MD  20814

   *Plaintiff*

v.

**The Honorable George W. Bush**
President of the United States
1600 Pennsylvania Avenue, NW
Washington, DC  20500

**Acumen Legal Services (India) Pvt., Ltd.**
Flat No. 101, #3-4-543 & 544
Laxmi Nilayam Apartment
Adj: YMCA Ground
Narayanaguda, Hyderabad 500027
Andhra Pradesh, India

**Acumen Solutions, LLC**
1100 Bearing Drive, #231
Houston, TX 77057

and

**John Doe, Esq. and Jane Doe, Esq.**
Addresses unknown

   *Defendants*

**AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF**

Civil Action
1:08-cv-00787-CKK

## NATURE OF THE ACTION

India-based Acumen Legal Services (India) Pvt., Ltd. ("Acumen India") has

solicited Newman McIntosh & Hennessey, LLP ("NMH") to provide litigation support

services to NMH from its offices in India.  Acumen India is part of a fast-growing

4883615

industry of Legal Process Outsourcers ("LPO") that promise lower litigation support costs through outsourcing litigation support services to foreign nationals who live and work overseas.  Acumen India, and other such LPOs ("litigation process outsourcers"), provides its litigation support services through the electronic transmission of documents and other data from U.S.-based law firms to Acumen India's offices.  In its solicitation of NMH's business, Acumen India informed NMH that it already provides such litigation support to certain District of Columbia and U.S. based attorneys (herein designated as "John Doe, Esq. and Jane Doe, Esq.").  On information and belief, John Doe, Esq. and Jane Doe, Esq. are competitors to NMH or are adverse to NMH clients in litigation.

NMH brings this action for declaratory judgment and equitable relief in order to gain certainty about whether the electronic transmission of data from the United States to Acumen India waives Fourth Amendment protection with respect to the data that is electronically transmitted.  It seeks this declaration knowing that foreign nationals who reside overseas lack Fourth Amendment protections.  It seeks this declaration having been informed, through published materials, that the United States Government engages in pervasive surveillance of electronically transmitted data wherein one party to the transmission is a foreign national residing overseas.   NMH seeks declarations as to whether

1)      its own electronic transmission of client data will affect a waiver of Fourth Amendment protections to that data,

2)    John Doe Esq. or Jane Doe, Esq.'s electronic transmission of non-client data (such as data produced to John Doe, Esq. and Jane Doe, Esq. during civil discovery) will waive Fourth Amendment protections to such data,

3)    NMH, John Doe, Esq., and Jane Doe, Esq. are required to obtain prior consent of the owner of such data prior to electronically transmitting it to a foreign national residing overseas,

4)    LPOs, such as Acumen, have an obligation to disclose the likelihood of Fourth Amendment waiver with respect to data that is electronically transmitted to foreign nationals residing overseas, and

5)    President Bush has an obligation to establish intelligence gathering protocols for the purpose of safeguarding Fourth Amendment rights with respect to attorney communications to and from foreign nationals residing overseas.

NMH also seeks injunctive relief commensurate with any declarations made by the Court.

## PARTIES TO THE ACTION

1.    Newman McIntosh & Hennessey, LLP is a Maryland registered limited liability partnership with its offices at 7315 Wisconsin Avenue, Suite 700 East, Bethesda, MD. NMH provides litigation services.

2.    Acumen Legal Services (India) Pvt., Ltd. ("Acumen India") is located at Flat No. 101, #3-4-543 & 544, Laxmi Nilayam Apartment Adj: YMCA Ground, Narayanaguda, Hyderabad 500027, Andhra Pradesh, India.  Acumen India has corporate citizenship in India.  Acumen India describes itself as "India's premier legal process outsourcing (LPO)

company." Acumen India employs citizens of India who are (for purposes of the Fourth

Amendment declarations requested) foreign nationals residing overseas. Acumen India's

personnel provide a variety of litigation and legal support services to United States-based

attorneys at significantly reduced rates relative to the rates for the same services within

the United States. Specifically (and according to Acumen's own published materials),

Acumen India's services include "Drafting Motions, Responses," "Discoveries and

Responses," "Taking intake calls," "Document Production," "Document Review," and

"Document Coding." Acumen provides these "paperless" services using a "server based

computing environment" and "[s]erver based computing." Acumen represents that its

"team of legal secretaries, paralegals and lawyers work around the clock to ensure that

the case moves from intake stage through to the trial stage in the shortest possible time,

saving law firms valuable time and resources." Acumen represents that 20 law firms

have used its services "reducing their costs by more than 40%" while increasing "case

handling capacity by as much as 200%." Acumen India directly engages in business in

the District of Columbia.

3.     Acumen Solutions, LLC, is a Texas-based subsidiary of Acumen India. On

information and belief, Acumen India does part of its business in the United States

through Acumen Solutions, LLC.

4.     John Doe, Esq. and Jane Doe, Esq. are District of Columbia and United States-

based attorneys (not yet identified) residing in the United States who use Acumen's

litigation support services. Such attorneys are either competitors of NMH or litigation

adversaries to NMH.

5.    George W. Bush is President of the United States.  President Bush, directly and through his deputies in the Executive Branch, is responsible for devising and implementing policies and procedures with respect to the signals intercept and other intelligence gathering functions of the Director of National Intelligence, the National Security Agency ("NSA"), and other United States Government intelligence agencies. On information and belief, President Bush is also responsible for recommending procedures for the sharing of intelligence gathering with The United Kingdom, Canada, New Zealand, and Australia ("UKUSA Allies").

**JURISDICTION AND VENUE**

6.    Subject matter jurisdiction in this matter is proper under 28 U.S.C.A. § 1336 (a)(1) as there is complete diversity of citizenship between the parties and the value of the services provided by Acumen Solutions, LLC exceeds $75,000 and the value of the services provided by Acumen Legal Services, Ltd., Pvt. Exceeds $75,000.  Subject matter jurisdiction is also founded upon 28 U.S.C.A. § 1346 (a)(1) as the United States is a defendant in an action founded upon the Constitution yet there exists no claim for money damages against the United States.

7.    The United States District Court for the District of Columbia has personal jurisdiction over Defendant Acumen as Defendant Acumen regularly conducts business in the District of Columbia and by doing so has availed itself of the jurisdiction of the District of Columbia.  Further, President Bush has his principal place of residence in the District of Columbia and directs the majority of executive branch functions from the District of Columbia.

8.      Venue is proper as the Parties all conduct and solicit substantial business in the

District of Columbia.

## ALLEGATIONS

9.       Through various interpretations of the United States Constitution, it has been

long-held that foreign nationals residing overseas have no Fourth Amendment rights or

protections.

10.     On information and belief, the view of President Bush is that where at least one

party to a communication is a foreign national residing overseas, no party to that

communication has a reasonable expectation of privacy to that communication sufficient

for the maintenance of Fourth Amendment rights.  Specifically, where at least one party

to a communication is a foreign national residing overseas, all the parties to that

communication waive Fourth Amendment protections with respect to any and all parts of

that communication that are received by the foreign national residing overseas.

11.     Since the Fourth Amendment provides no protection to foreigners living overseas,

the United States Government, by and through such entities as NSA, has the authority to

intercept any communication that has at least one foreign terminus.

12.     The Ninth Circuit Court of Appeals has recognized that the existence of NSA

surveillance capabilities is so widely known that the United States Government can no

longer avoid discussion of its existence or activities under the "state secrets" privilege.

13.     On information and belief, the United States, United Kingdom, New Zealand,

Australia, and Canada participate in an electronic surveillance program that is, on

information and belief, called "ECHELON."

14.     ECHELON is an automated global interception and relay system operated by the United States Government and UKUSA Allies.  On information and belief, ECHELON is administered by the NSA.

15.     On information and belief, ECHELON intercepts as many as 3 billion communications every day, including phone calls, e-mail messages, Internet downloads and satellite transmissions.

16.     According to published materials, raw data seized from ECHELON intercepts are relayed to NSA memory buffers.

17.     Published materials estimate that memory buffers maintained by NSA store five trillion pages of data. Thus, the United States Government seizes the raw data harvested by ECHELON.

18.     According to published materials, raw data loaded into NSA memory buffers are digitally searched using key words and phrases supplied by the intelligence agencies of the United States, Canada, The United Kingdom, New Zealand, and Australia.  Thus, the United States Government searches the raw data that it has seized through ECHELON.

19.     According to published materials, intelligence information that corresponds with the key words and phrases supplied by UKUSA Allies is transferred to those agencies.

20.     According to Sixth Circuit Court of Appeals precedent, once the NSA has lawful possession of an intercept, it may share that intercept with or any other agency of the federal government without violating the Fourth Amendment.

21.     Acumen India provides its litigation support and other services in India.

22.     Acumen India provides its litigation and other services in a paperless environment, *i.e.*, Acumen obtains and sends the information required for its services via electronic transmissions.

23.     On information and belief, Acumen India provides litigation support services where all parties to litigation pending in the United States are American citizens and there exist no foreign parties to the lawsuit.

24.     Acumen India provides its services through foreign nationals who reside overseas in India.

25.     The foreign nationals who work for Acumen in its facilities in India have no Fourth Amendment rights under the United States Constitution.

26.     Transmissions of electronic data from the United States to Acumen India lack Fourth Amendment protection because a counterparty to such electronic communications is a foreign national residing overseas.

27.     Because of the pervasive nature of NSA surveillance through ECHELON and other surveillance systems, transmissions from the United States to Acumen India, and transmissions from Acumen India to the United States are seized by the United States Government.

28.     Transmissions that are seized by the United States Government are also searched by the United States Government.

29.     Transmissions that are seized by the United States Government are also searched by the United States Government on behalf of foreign governments such as UKUSA Allies.

8

30.     Where electronic transmission of data to Acumen India pertains to litigation matters wherein all parties to the litigation are American citizens residing in America, the electronic transmission of such data to foreign nationals residing overseas confers a windfall of information about such American citizens to the U.S. Government.

31.     Where electronic transmission of data to Acumen India pertains to litigation matters wherein all parties to the litigation are American citizens residing in America, the electronic transmission of such data to foreign nationals residing overseas confers a windfall of information about such American citizens to foreign governments such as UKUSA Allies.

32.     Because of the cooperative nature of the ECHELON system, there is nothing that shields the intercepted data from being disclosed to the Canadian, British, Australian or New Zealand governments.

33.     Because of the pervasive nature of the seizure and search of electronic transmissions obtained through ECHELON, the United States Government is necessarily engaged in the seizure and search of client secrets and client confidences.

34.     Because information electronically transmitted to foreign nationals residing overseas is, in fact, seized through the ECHELON program, attorney-client privileges otherwise protecting communications between United States-based attorneys and foreign nationals residing overseas are breached.

35.     In sum, electronic transmissions from the United States to foreign nationals residing overseas appear to affect a waiver of Fourth Amendment rights, a waiver of attorney-client privileged communications, and can affect a disclosure of client

confidences and secrets.  This waiver of rights would nullify the reasonable expectation

of privacy that American citizens – litigating purely domestic disputes in U.S. Courts –

would have in the documents that they produce in the course of civil litigation.

36.    NMH has been actively solicited by Acumen India to outsource litigation support

services to its offices in India.

37.    At no time during this solicitation did Acumen India disclose that electronic

transmission of data provided by NMH would affect a waiver of Fourth Amendment

rights in the data that is electronically transmitted.

38.    On information and belief, John Doe, Esq. and Jane Doe, Esq. do not disclose to

their clients or adversaries in litigation that the electronic transmission of data to foreign

nationals residing overseas will affect a waiver of Fourth Amendment rights.

39.    On information and belief, John Doe, Esq. and Jane Doe, Esq do not obtain from

their clients or from their adversaries in litigation, written, knowing waivers of Fourth

Amendment protections prior to those attorneys electronically transmitting their data to

foreign nationals residing overseas.

40.    On information and belief, the United States has no protocol in place that will

protect the electronic communications between a United States based attorney and a

foreign national residing overseas from disclosure to the United States Government or its

UKUSA Allies.

41.    Plaintiff believes that there is a substantial likelihood of damage to United States-

based clients of legal services where Fourth Amendment rights are involuntarily waived

through a United States-based attorney electronically transmitting data from the United

States to foreign nationals, such as Acumen, residing overseas.

## COUNT I
Declaration of Rights and Obligations with Respect to
NMH; John Doe, Esq.; and Jane Doe, Esq.

42.      Plaintiff incorporates the allegations of Paragraph 1 through Paragraph 40 into the

allegations of Count I.

43.      With respect to NMH, Plaintiff seek a declaration by the Court on the following

question:

> **Given the pervasive nature of the signals intercept by the United States
> Government and UKUSA Allies, will the electronic transmission of
> data to foreign nationals residing overseas waive Fourth Amendment
> protections with respect to the data transmitted?**

44.      Such a declaration is necessary because, in an increasingly globalized legal

services environment, NMH must understand the extent of Fourth Amendment waiver

where attorneys electronically transmit data to foreign nationals residing overseas for

legal services.

## COUNT II
Declaration of Rights and Obligations with Respect to
NMH; John Doe, Esq.; and Jane Doe, Esq.

45.      Plaintiff incorporates the allegations of Paragraphs 1 through 40 into the

allegations of Count II.

46.      With respect to NMH, Plaintiff seeks a declaration by the court on the following

question:

11

> **If Fourth Amendment rights are at risk of being waived by the electronic transmission of data to foreign nationals residing overseas, are United States attorneys who electronically transmit data to foreign nationals residing overseas obligated to disclose to clients – prior to the transmission – that such a transmission will waive Fourth Amendment rights with respect to the data that is transmitted?**

47.    Such a declaration is necessary because attorneys need to understand what disclosures are necessary for to ensure that Fourth Amendment rights are not inadvertently waived by attorneys who have not disclosed Fourth Amendment waiver issues to clients prior to electronically transmitting data to foreign nationals residing overseas.

## COUNT III
Declaration of Rights and Obligations with Respect to
NMH; John Doe, Esq.; and Jane Doe, Esq.

48.    Plaintiff incorporates the allegations of Paragraphs 1 through 40 into the allegations of Count III.

49.    With respect to NMH; John Doe, Esq.; and Jane Doe, Esq., Plaintiff seeks a declaration by the court on the following question:

> **If Fourth Amendment rights are at risk of being waived by the electronic transmission of data to foreign nationals residing overseas, must United States-based attorneys obtain a written, knowing waiver – prior to transmission – of Fourth Amendment rights with respect to the data that is transmitted?**

50.    Such a declaration is necessary because the question of whether the waiver, to the extent there is one, was knowing and voluntary will undoubtedly arise. Critical to that

analysis will be whether sufficient evidence exists to determine that the client made a

knowing and voluntary waiver of Fourth Amendment rights.

### COUNT IV
Declaration of Rights and Obligations with Respect to
NMH; John Doe, Esq.; and Jane Doe, Esq.

51.     Plaintiff incorporates the allegations of Paragraphs 1 through 40 into the

allegations of Count IV.

52.     With respect to NMH; John Doe, Esq.; and Jane Doe, Esq., Plaintiff seeks a

declaration by the court on the following question:

> **If Fourth Amendment rights are waived with respect to the electronic transmission of data to foreign nationals residing overseas, must United States-based attorneys who have already electronically transmitted data to foreign nationals residing overseas disclose all such prior communications to their clients and non-clients (*e.g.*, adverse parties in litigation or third parties from whom documents have been obtained) so that those persons can assess whether they have been damaged by the loss of Fourth Amendment protections?**

53.     Such a declaration is necessary to determine whether data has already been seized

by the United States Government or its UKUSA allies, to determine whether clients

whose data has already been electronically transmitted should make inquiry with the

United States Government about whether it retains such data, and so that clients can

assess whether they have been damaged by prior disclosures.

## COUNT V
Declaration of Rights and Obligations with Respect to
NMH; John Doe, Esq.; and Jane Doe, Esq.

54.     Plaintiff incorporates the allegations of Paragraphs 1 through 40 into the

allegations of Count V.

55.     With respect to John Doe, Esq. and Jane Doe, Esq., Plaintiff seek a declaration by

the court on the following question:

> **Where an attorney obtains data from non-clients, *e.g.* opponents in
> litigation or third parties from whom data is obtained, must the
> attorney seek the prior consent of that non-client prior to electronically
> transmitting that data to a foreign national residing overseas?**

56.     Such a declaration is necessary in order for NMH to safeguard its clients' Fourth

Amendment rights with respect to data provided to litigation opponents in the course of

civil discovery.  This declaration is needed because litigants appear to be waiving the

Fourth Amendment rights of their litigation adversaries by electronically transmitting

documents to Acumen and other overseas LPOs when they outsource litigation support

processes.

## COUNT VI
Declaration of Obligation with Respect to
Fourth Amendment Rights as to Acumen

57.     Plaintiff incorporates the allegations of Paragraphs 1 through 40 into the

allegations of Count VI.

14

58.    With respect to Acumen and other similarly situated LPOs or entities engaged in

providing litigation support services using foreign nationals residing overseas, Plaintiff

seeks a declaration with respect to the following question:

> **Must foreign nationals who do solicit business in the United States to provide litigation support services overseas disclose that any electronic transmission of data to a foreign national residing overseas will waive Fourth Amendment rights with respect to the data that is electronically transmitted?**

59.    Such a declaration is necessary in order for those contemplating the use of LOP

services to be on notice that the electronic transmission of data to such foreign nationals

residing overseas will waive Fourth Amendment rights.


## COUNT VII
Declaration of Obligation with Respect to
Fourth Amendment Rights
As to George W. Bush
President of the United States

60.    Plaintiff incorporates the allegations of Paragraphs 1 through 40 into the

allegations of Count VI.

61.    With respect to President George Bush and the Executive Branch agencies over

which he has authority and oversight, Plaintiff seeks a declaration with respect to the

following question:

> **Given the increasingly global nature of commerce, and given the need for United States-based attorneys to have assurance that neither the United States Government or its UKUSA Allies will intrude into the otherwise privileged and confidential attorney-client communications wherein a party to such communication is a foreign national residing overseas, is the President of the United States obligated to establish protocols and procedures to ensure that electronic transmissions to and from a U.S.-based attorney and a foreign national counterpart residing**

**overseas is not subject to seizure by the United States Government and its UKUSA Allies?**

62.    Attorneys in the United States need guidance about whether the United States Government, including the United States District Courts, place sufficient value on the sanctity of attorney-client communications to put in place processes and protocols that will shield attorney-client privileged communications from review by agents of the United States Government or its UKUSA allies.

## PRAYER FOR RELIEF

63.    WHEREFORE, Plaintiff Newman McIntosh & Hennessey, LLP prays that the Court will take the following actions:

a.    Make declarations with respect to the questions posed in Counts I-VII of the Complaint.

b.    Where the Court's declaration with respect to Count II is "yes," issue an Order permanently enjoining NMH; John Doe, Esq.; and Jane Doe, Esq. from electronically transmitting data from the United States to foreign nationals residing overseas until such attorneys disclose to their clients that such transmission will waive Fourth Amendment rights with respect to the data that is electronically transmitted.

c.    Where the Court's declaration with respect to Count III is "yes," issue an Order permanently enjoining NMH, John Doe, Esq. and Jane Doe, Esq. until such attorneys obtain written waivers of the Fourth Amendment rights in the data sought to be transmitted – written waivers that evidence the

knowing and voluntary waiver of Fourth Amendment rights with respect to the data to be electronically transmitted;

d.    <u>Permanently enjoin</u> United States-based attorneys from electronically transmitting data obtained from non-clients to foreign nationals residing overseas without obtaining the prior consent of such persons.

e.    Issue an <u>Order</u> that all United States-based attorneys who have electronically transmitted client or non-client data to foreign nationals residing overseas to disclose all such prior transmissions to their clients and non-clients.

f.    <u>Permanently enjoin</u> all foreign based LPOs, such as Acumen India, from soliciting business in the United States until such LPOs conspicuously disclose (in appropriate type-face for printed materials, and in oral disclosures where such written materials are not used) that the electronic transmission of data from the United States to foreign nationals residing overseas will affect a waiver of Fourth Amendment protection of such data and documents.

g.    Issue an <u>Order</u> that within 180 days, the President of the United States establish protocols and procedures that will prevent the waiver of Fourth Amendment rights with respect to electronically transmitted data from United States-based attorneys to foreign nationals residing overseas, and thereby safeguard the attorney-client privilege and client communications and client confidences and secrets.

17

h.      Provide any and all equitable and legal relief that is necessary to safeguard

the rights of attorneys, their clients, and non-client parties who produce

documents to attorneys.

Respectfully submitted this Wednesday, May 07, 2008.

Joseph A. Hennessey, Esq.
DC Bar No. 453582
Newman McIntosh & Hennessey, LLP
7315 Wisconsin Avenue, 700 East
Bethesda, MD  20814
(301) 654-3400