IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEWMAN MCINTOSH & HENNESSEY,   )<br>   )<br>   Plaintiff,   )<br>   )<br>   v.   )<br>   )<br>THE HONORABLE GEORGE W. BUSH,   )<br>President of the United States,   )<br>ACUMEN LEGAL SERVICES (INDIA)   )<br>PVT., LTD., and   )<br>JOHN DOE, ESQ. AND JANE DOE, ESQ.,   )<br>   )<br>   Defendants.   )<br>   ) | Civil Action No. 08-00787 (CKK) |

## MOTION TO DISMISS OF
## THE PRESIDENT OF THE UNITED STATES

Defendant The Honorable George W. Bush, President of the United States, by and through his undersigned attorneys, hereby moves to dismiss this action as to the claim against him pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. This Motion is supported by the Memorandum of Points and Authorities in Support of the President of the United States' Motion to Dismiss filed concurrently herewith.

Dated: July 28, 2008

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

*/s/ Caroline Lewis Wolverton*
CAROLINE LEWIS WOLVERTON
D.C. Bar No. 496433
U.S. Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone: (202) 514-0265
Facsimile:  (202) 616-8202
caroline.lewis-wolverton@usdoj.gov

Attorneys for Defendant The Honorable
George W. Bush, President of the United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEWMAN MCINTOSH & HENNESSEY, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>THE HONORABLE GEORGE W. BUSH, )<br>President of the United States, )<br>ACUMEN LEGAL SERVICES (INDIA) )<br>PVT., LTD., and )<br>JOHN DOE, ESQ. AND JANE DOE, ESQ., )<br>)<br>    Defendants. )<br>) | Civil Action No. 08-00787 (CKK) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE PRESIDENT OF THE UNITED STATES' MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff, a Maryland law firm, brings this suit seeking declaratory and injunctive relief concerning electronic transmissions of data between U.S.-based lawyers and a legal support services firm in India. The Amended Complaint alleges that the United States intercepts some of those transmissions through surveillance programs operated by the National Security Agency ("NSA"). Plaintiff seeks a number of declarations regarding Fourth Amendment and other rights and responsibilities of Plaintiff, the Indian legal support services firm, its U.S. corporate subsidiary, and unidentified U.S.-based lawyers vis-à-vis their transmissions of information overseas.

The Amended Complaint also names the President of the United States as a defendant. It seeks an order requiring the President to establish protocols and procedures that would prevent

the federal government from seizing U.S.-based lawyers' electronic transmissions of data to foreign nationals overseas.

Plaintiff's request for injunctive relief requiring the President to take specific action is extraordinary and clearly outside the Court's jurisdiction. It is also precluded by sovereign immunity. Even before reaching those bars to Plaintiff's claim against the President, however, the Court should dismiss the claim for the simple reason that Plaintiff lacks Article III standing.

Plaintiff fails to allege an injury in fact, as is necessary to establish standing to invoke the Court's jurisdiction. The Amended Complaint does not allege that Plaintiff has been be subjected to surveillance or that surveillance of Plaintiff is imminent. Even if the Amended Complaint made such an allegation, it would be wholly speculative and conjectural.

Accordingly, Plaintiff's claim against the President should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## **BACKGROUND**

Plaintiff Newman McIntosh & Hennessey of Bethesda, Maryland alleges that the United States and various other countries are involved in a surveillance program called "ECHELON" that is administered by NSA. (Am. Compl. ¶¶ 13-14.) According to Plaintiff, this program intercepts numerous communications on a daily basis, and NSA maintains, stores and searches data from the intercepts. (*Id.* ¶¶ 15-18.) Plaintiff further alleges that the United States shares some of the information gathered through "ECHELON" and other NSA surveillance programs with its allies. (*Id.* ¶ 19.)

According to Plaintiff, these surveillance programs implicate Fourth Amendment interests because some of the data transmitted between U.S.-based lawyers and foreign nationals overseas contains information that is covered by the attorney-client privilege or otherwise

confidential.  (*Id.* ¶¶ 10, 26-35.)  Plaintiff states that the U.S. government and its allies search and seize those intercepted transmissions.  (*Id.* ¶¶ 26-28.)

On the basis of these allegations, Plaintiff has filed suit against the President of the United States and three private parties.  Plaintiff sues the President because, according to Plaintiff, the President "is responsible for devising and implementing policies and procedures with respect to the signals intercept and other intelligence gathering functions of [the U.S. intelligence community] . . . [and] recommending procedures for the sharing of intelligence gathering with The United Kingdom, Canada, New Zealand, and Australia ('UKUSA Allies')."  (*Id.* ¶ 5.)  Plaintiff has not named any other government official or federal agency as a defendant.

The three private-party defendants are Acumen Legal Services (India) Pvt., Ltd. ("Acumen India"), Acumen Solutions, LLC ("Acumen Solutions"), and John Doe Esq. and Jane Doe, Esq.  (*Id.* ¶¶ 2-4.)  According to Plaintiff, Acumen India—which is the alleged parent of Acumen Solutions—employs foreign nationals residing overseas to provide legal support services to U.S.-based lawyers.  (*Id.* ¶¶ 2-3.)  Plaintiff does not allege that it has engaged or plans in the immediate future to engage Acumen India for such services.  Nor does Plaintiff allege that it has transmitted or plans in the immediate future to transmit any information concerning it or its clients to Acumen India.  Rather, Plaintiff merely alleges that it "has been actively solicited by Acumen India to outsource litigation support services to its offices in India."  (*Id.* ¶ 36.)  Plaintiff describes John Doe, Esq. and Jane Doe, Esq. as "District of Columbia and United States-based attorneys (not yet identified) residing in the United States who use Acumen's litigation support services.  Such attorneys are either competitors of NMH or litigation adversaries to NMH."  (*Id.* ¶ 4.)  Plaintiff does not allege that its information or its clients' information has been sent by

3

John Doe, Esq. and Jane Doe, Esq. to Acumen India or Acumen Solutions or that such transmission is imminent.

Plaintiff does not allege that the government has intercepted, seized, or searched any communications pertaining to Plaintiff or Plaintiff's clients. Nor does it allege that interception, seizure, or search is imminent. At best, the Amended Complaint can be read to speculate that the government has intercepted or will at some future time intercept transmissions between Acumen India and unidentified lawyers, and to speculate that those transmissions contain information belonging to unidentified clients of such lawyers. (*See id.* ¶¶ 34-35, 38-39.)

Plaintiff also does not allege that the interceptions it speculates about have caused or imminently will cause injury to Plaintiff. Instead, Plaintiff relies on alleged harm to unidentified third-parties. (*See id.* ¶¶ 30-35, 41.) According to Plaintiff, the interception of transmitted data "confers a windfall of information" about American litigants to the governments of the United States and its allies. (*Id.* ¶¶ 30-32.) Consequently, Plaintiff asserts, "electronic transmissions from the United States to foreign nationals residing overseas appear to affect [sic] a waiver of Fourth Amendment rights, a waiver of attorney-client privileged communications, and can affect [sic] a disclosure of client confidences and secrets." (*Id.* ¶ 35.) Plaintiff further maintains that "[t]his waiver of rights would nullify the reasonable expectation of privacy that American citizens—litigating purely domestic disputes in U.S. courts—would have in the documents that they produce in the course of civil litigation." (*Id.*)

Although the Amended Complaint contains seven counts, only Count VII pertains to the President. (*Id.* ¶¶ 42-62.) Count VII seeks a declaration as to whether "the President of the United States [is] obligated to establish protocols and procedures to ensure that electronic transmissions to and from a U.S.-based attorney and a foreign national counterpart residing

overseas is not subject to seizure by the United States Government and its UKUSA Allies[.]" (*Id.* ¶ 61.)  Plaintiff's Prayer for Relief asks the Court to order the President to "establish protocols and procedures that will prevent the waiver of Fourth Amendment rights with respect to electronically transmitted data from United States-based attorneys to foreign nationals residing overseas, and thereby safeguard the attorney-client privilege and client communications and client confidences and secrets."  (*Id.* ¶ 63(g).)

## ARGUMENT

Plaintiff's allegations fail to establish a justiciable case or controversy against the President.  Plaintiff does not allege an "injury in fact" that is "concrete and particularized" and therefore lacks standing.  In addition, the Court is without jurisdiction to issue the declaratory and injunctive relief against the President that Plaintiff requests, and moreover no waiver of sovereign immunity permits it.  For these reasons, set forth in detail below, Plaintiff's claim against the President should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### I.  LEGAL STANDARD FOR RULE 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a claim on the ground that the court lacks subject matter jurisdiction, for example because the plaintiff lacks standing.  Although when reviewing a motion to dismiss under rule 12(b)(1) a court must accept as true all well-pled factual allegations in the complaint, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## II.   PLAINTIFF LACKS ARTICLE III STANDING

The Amended Complaint alleges no injury suffered by Plaintiff. Even if it did, the allegation would be necessarily speculative and conjectural and therefore insufficient to constitute the injury in fact necessary for standing.

### A.   Legal Standard for Standing

"The judicial power of the United States . . . is not an unconditioned authority" but is limited by Article III of the Constitution. *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 471 (1982). Article III requires that federal courts exercise their jurisdiction only to decide "actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). In the absence of an actual case or controversy, a court is without jurisdiction to decide a matter. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also Poe v. Ullman*, 367 U.S. 497, 502 (1961). In an effort to give meaning to Article III's case-or-controversy requirement, courts mandate that all cases be "justiciable." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). This action implicates a core component of the justiciability requirement—standing—the absence of which requires dismissal of Plaintiff's claim against the President.

The doctrine of standing "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen*, 468 U.S. at 752. "[T]he irreducible constitutional minimum of standing" requires satisfaction of each of three elements: (1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of" such that the injury is "fairly traceable" to the defendant; and (3) a

likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted); *accord, e.g.*, *Nat'l Treasury Employees Union*, 101 F.3d at 1427 (citing *Lujan*). A plaintiff bears the burden of establishing standing to assert its claim. *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1383 (D.C. Cir. 1984) (citing *Warth*, 422 U.S. at 501-02).

      **B.    Plaintiff Alleges No Injury In Fact Because It Does Not Allege a Cognizable Injury.**

The Amended Complaint contains no allegation that the government has intercepted any communication between Plaintiff and Acumen India or that interception is imminent. The only communication to which Plaintiff was a party that is described in the Amended Complaint is Acumen India's solicitation of Plaintiff. (Am. Compl. ¶ 36.) The Amended Complaint does not allege that Plaintiff has provided or plans to provide any information to Acumen India in response to that solicitation. The Amended Complaint also does not allege that any information pertaining to Plaintiff has been or imminently will be intercepted by the government. Plaintiff does not even allege that information pertaining to it has been or will in the immediate future be transmitted between "John Doe, Esq. and Jane Doe, Esq." and Acumen India. Thus, the Amended Complaint does not allege any injury to Plaintiff at all.

Plaintiff's only allegation of injury concerns unidentified third parties who are not participants in this lawsuit. (*See* Am. Compl. ¶ 35.) Plainly, Plaintiff cannot establish standing based on alleged injury to the general group "American citizens . . . litigating purely domestic disputes in U.S. Courts . . ."[1] (*Id.*) And the Amended Complaint does not allege that

---

[1] That the transmissions alleged to be intercepted may contain attorney-client or otherwise privileged information is not significant for purposes of standing or the merits. *See, e.g.*, *Katz v. United States,* 389 U.S. 347, 352 (1967) (applying Fourth Amendment to telephone conversations that were not protected by attorney-client or other privileges).

7

information pertaining to Plaintiff's clients has been or imminently will be intercepted by the government. Plaintiff does not even allege that its clients' information has been or in the immediate future will be transmitted between "John Doe, Esq. and Jane Doe, Esq." and Acumen India. Even if the Amended Complaint did make such allegations, they could not establish an injury in fact because Plaintiff cannot vicariously assert Fourth Amendment rights of others. *See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.") (citing cases) (internal quotation marks omitted); *see also ACLU v. NSA*, 493 F.3d 644, 673-74 (6th Cir. 2007) (ban on vicarious assertions of Fourth Amendment violations extends to lawyers who fail to allege adequately that they, as opposed to their clients, have been subjected to an unlawful search or seizure) (citing *Rakas*).[2]

### C. Any Injury Could Be Only Speculative and Conjectural.

Even if Plaintiff alleged that information pertaining it or its clients (assuming *arguendo* that Plaintiff could vicariously assert a Fourth Amendment claim) had been or will in the immediate future be intercepted, such an allegation would not constitute an injury in fact because it would be necessarily speculative and conjectural.

The Amended Complaint alleges that "the pervasive nature of NSA surveillance through ECHELON and other surveillance systems" has led to the interception of transmissions to and from U.S.-based attorneys and Acumen India. (Am. Compl. ¶¶ 27-28.) Because the allegation concerns transmissions to and from unidentified attorneys—none of whom are before the

---

[2] In *National Cottonseed Products Association v. Brock*, the D.C. Circuit discussed the ban on third-party assertions of Fourth Amendment rights in terms of the exclusionary rule. *Nat'l Cottonseed Prods. Ass'n v. Brock*, 825 F.2d 482, 489-92 (D.C. Cir. 1987). However, that case did not involve a Fourth Amendment challenge, and the D.C. Circuit's opinion did not foreclose the argument that Fourth Amendment rights cannot be asserted vicariously in a non-exclusionary rule context. *See id.* In any event, Plaintiff certainly cannot assert Fourth Amendment rights of unidentified third parties who are not its clients.

8

Court—it necessarily speculates that (1) such transmissions have occurred or will occur in the immediate future, (2) any such transmissions have been intercepted or imminently will be intercepted, and (3) any such intercepted transmissions contain information concerning Plaintiff or Plaintiff's clients.[3]

The Sixth Circuit's recent decision in *ACLU v. NSA* held that speculative allegations about government interception of communications failed to establish standing, and is persuasive here. The plaintiffs—lawyers and others communicating with suspected al Qaeda affiliates—had alleged, *inter alia*, that an NSA surveillance program violated their legitimate expectation of privacy in overseas communications and was unlawful under the Fourth Amendment. *Id.* at 653-54. Chief Judge Batchelder, at the outset of her standing analysis, noted the plaintiffs' concession that "it would be unprecedented for a court to find standing for a person to litigate a Fourth Amendment cause of action without any evidence that the defendant (i.e., government)

---

[3] Even if the Amended Complaint alleged that transmissions containing Plaintiff's information (or, assuming *arguendo* that Plaintiff could vicariously assert a Fourth Amendment claim, information concerning Plaintiff's clients) had been or imminently will be intercepted, Plaintiff still would be obligated to prove the injury, *viz.*, that the interceptions on which it bases its claims have occurred or will occur. *See Lujan*, 504 U.S. at 561 (plaintiffs retain burden of establishing standing at every stage of litigation, including proving it through evidence adduced at trial). Precedent indicates that it is unlikely that Plaintiff could prove that NSA has intercepted or will in the immediate future intercept particular transmissions. *See* 50 U.S.C. § 402 n.6, § 6(a) ("nothing in [the National Security Agency Act of 1959] or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such agency," subject to an exception not applicable here); *see also, e.g.*, *Halkin v. Helms*, 598 F.2d 1, 8-9 (D.C. Cir. 1978) (upholding assertion of state secrets privilege over requested disclosure of whether NSA had acquired plaintiff-appellants' communications and describing harm to national security that could flow from confirmation or denial of acquisition of particular communications); *ACLU v NSA*, 493 U.S. 644, 653 (6th Cir. 2007) (recognizing that upheld assertion of "State Secrets Doctrine" precluded plaintiffs from producing any evidence that NSA had ever intercepted their communications). For the same reason, assuming *arguendo* that Plaintiff could prove that it had standing and that its claim otherwise was properly before the Court, it is doubtful that Plaintiff would be able to prove entitlement to the relief it seeks.

had actually subjected that particular person to an illegal search or seizure."[4]  *Id.* at 655 n.11.  The court also recognized that the plaintiffs' alleged injuries were based on the possibility of interception and that "the alternative possibility remains that the NSA might *not* be intercepting, and might *never* actually intercept, any communication by any of the plaintiffs named in this lawsuit."  *Id.* at 656.  It concluded that the plaintiffs' alleged injuries based on claimed privacy violations were "not concrete or imminent," and that the plaintiffs lacked standing to assert a Fourth Amendment claim.  *Id.* at 655.

The allegations of injury that Plaintiff asserts are even less concrete than the allegations in the *ACLU* case that warranted dismissal for lack of standing.  The *ACLU* plaintiffs were themselves engaged in and, in the lawyers' case, represented clients who were engaged in the communications alleged to be subject to interception.  Plaintiff here alleges neither.  Yet many of the reasons the Sixth Circuit concluded that the plaintiffs lacked standing are present here.  As in *ACLU*, Plaintiff does not allege that it or its clients were "actually subjected . . . to an illegal search or seizure."  *Id.* at 655 n.11.  Instead, Plaintiff—like the *ACLU* plaintiffs—only speculates about interceptions.  Also as in *ACLU*, there exists the possibility that NSA "might *not* be intercepting, and might *never* actually intercept" any communications pertaining to Plaintiff or Plaintiff's clients.  *Id.* at 656.  Accordingly, like the *ACLU* plaintiffs, Plaintiff relies on allegations that are speculative and conjectural rather than concrete and imminent, and cannot establish an injury in fact.  *See also Warshak v. United States*, No. 06-4092, 2008 WL 2698177, *4 (6th Cir. July 11, 2008) (en banc) (Fourth Amendment claim based on speculation that government would search plaintiff's e-mail account was "not 'fit' for judicial review").

---

[4] Judge Gibbons concurred in the judgment and agreed that the plaintiffs lacked standing because they failed to demonstrate that they personally had been subject to surveillance. *ACLU*, 493 F.3d at 688.

\* \* \*

In sum, Plaintiff fails to allege a cognizable injury, and even if it did the injury would be speculative and conjectural. Plaintiff therefore lacks standing, and the Court is without subject matter jurisdiction over Plaintiff's claim against the President.

### III.   THE COURT CANNOT ORDER THE PRESIDENT TO TAKE ACTION

In addition to the lack of an injury in fact, Plaintiff's claim against the President fails because this Court lacks authority to issue the injunctive relief Plaintiff seeks. With respect to the President, Plaintiff's Prayer for Relief asks the Court to

> Issue an <u>Order</u> that within 180 days, the President of the United States establish protocols and procedures that will prevent the waiver of Fourth Amendment rights with respect to electronically transmitted data from United States-based attorneys to foreign nationals residing overseas, and thereby safeguard the attorney-client privilege and client communications and client confidences and secrets.

(Am. Compl. ¶ 63(g) (emphasis in original)).

The relief that Plaintiff seeks against the President is "extraordinary." *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (plurality opinion) ("While injunctive relief against executive officials like the Secretary of Commerce is within the courts' power, *see Youngstown Sheet & Tube Co. v. Sawyer*, [343 U.S. 579 (1952),] the District Court's grant of injunctive relief against the President himself is extraordinary, and should have raised judicial eyebrows.").[5]

In *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475 (1866), the Supreme Court was asked to issue an injunction restraining President Andrew Johnson from enforcing the Reconstruction Acts. The Court held that it was without power to do so and that it "ha[d] no jurisdiction of a bill

---

[5] Justice Scalia, while not joining all of Part III of the opinion authored by Justice O'Connor, agreed that courts lack the power to order declaratory or injunctive relief against the President in the performance of his official duties. *Franklin*, 505 U.S. at 826-29 (Scalia, J., concurring in part and concurring in the judgment).

to enjoin the President in the performance of his official duties." *Mississippi*, 71 U.S. (4 Wall.) at 501. Justice Scalia has explained that, subsequent to *Mississippi*,

> [t]he apparently unbroken historical tradition supports the view, which I think implicit in the separation of powers established by the Constitution, that the principals in whom the executive and legislative powers are ultimately vested— viz., the President and the Congress (as opposed to their agents)—may not be ordered to perform particular executive or legislative acts at the behest of the Judiciary.

*Franklin*, 505 U.S. at 827 (referencing *Mississippi*) (Scalia, J., concurring in part and concurring in the judgment). Likewise here, the Court lacks authority to order the President to issue particular protocols or procedures as Plaintiff requests.

For similar reasons, Plaintiff's claim against the President is barred by sovereign immunity. "Under settled principles of sovereign immunity, 'the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Dalm*, 494 U.S. 596, 608 (1990) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)); *accord, e.g.*, *Kalodner v. Abraham*, 310 F.3d 767, 769 (D.C. Cir. 2002). "Waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed.'" *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)); *accord, e.g.*, *Kalodner*, 310 F.3d at 769.

The Amended Complaint cites no waiver of sovereign immunity for Plaintiff's claim against the President, nor is an applicable waiver apparent. The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202, which the Amended Complaint does not cite but suggests is a basis for Plaintiff's claim, does not waive sovereign immunity. *Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C. 2008) (citing *Balistrieri v. United States*, 303 F.2d 617, 619 (7th Cir. 1962)); *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (DJA "is not an

12

independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right") (citation omitted). Nor does the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which the Amended Complaint cites (although it incorrectly refers to section 1346(a)(1)), (Am. Compl. ¶ 6), constitute a waiver of sovereign immunity for equitable claims. *Student Loan Mktg. Ass'n v. Riley*, 104 F.3d 397, 401 (D.C. Cir. 1997); *Newdow v. Eagen*, 309 F. Supp. 2d 29, 36 n.4 (D.D.C. 2004). The statute conferring "diversity jurisdiction," 28 U.S.C. § 1332, which the Amended Complaint references (but incorrectly cites as 28 U.S.C. § 1336(a)(1)), (Am. Compl. ¶ 6), contains no waiver. Plaintiff does not cite the Administrative Procedure Act's waiver of sovereign immunity, 5 U.S.C. § 702, but it is inapplicable in any event because the President is not an agency within the meaning of that Act. *Dalton v. Specter*, 511 U.S. 462, 470 (1994) (citing *Franklin*, 505 U.S. at 800-01); *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991). Because sovereign immunity precludes Plaintiff's claim against the President, the Court is without subject matter jurisdiction over it. *See, e.g.*, *Dalm*, 494 U.S. at 608.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claim against the President for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

        Respectfully submitted,

        GREGORY G. KATSAS
        Assistant Attorney General

        JEFFERY A. TAYLOR
        United States Attorney

        VINCENT M. GARVEY
        Deputy Branch Director

        */s/ Caroline Lewis Wolverton*
        CAROLINE LEWIS WOLVERTON
        D.C. Bar No. 496433
        U.S. Department of Justice
        Civil Division
        Federal Programs Branch
        P.O. Box 883
        Washington, D.C.  20044
        Telephone: (202) 514-0265
        Facsimile:  (202) 616-8202
        caroline.lewis-wolverton@usdoj.gov

        Attorneys for Defendant The Honorable
        George W. Bush, President of the United States