**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| NEWMAN MCINTOSH & HENNESSEY | ) | |
| | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | 08-00787 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| THE HONORABLE GEORGE W. BUSH, | ) | |
| President of the United States | ) | |
| ACUMEN LEGAL SERVICES (INDIA) PVT. LTD. | ) | |
| 6-3-351, Ravi Chambers, | ) | |
| 2nd Floor, Road No.1 | ) | |
| Banjara Hills, Hyderabad-500034 | ) | |
| India | ) | |
| ACUMEN SOLUTIONS, LLC and | ) | |
| JOHN DOE, ESQ. AND JANE DOE, ESQ., | ) | |
| | ) | |
| Defendants. | ) | |

_____ )

**MOTION BY ACUMEN LEGAL SERVICES**
**(INDIA) PVT. LTD TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2), Defendant Acumen Legal

Services (India) Pvt. Ltd. hereby files this motion to dismiss with prejudice.  In

accordance with Local Rule 7, a memorandum of points and authorities is attached.

Dated: August 14, 2008

Respectfully submitted,

_/s/_ **David M. Lubitz**
DAVID M. LUBITZ
Law Office of David M. Lubitz
210 5th Street, NE
Washington D.C. 20002
(202) 492-4273
david.lubitz@verizon.net
D.C. Bar #457558

Attorney for Defendant
Acumen Legal Services
(India) Pvt. Ltd.

*On the Brief:*

Abhay Shankar Babu
Abhijith Chandrasekhariah
Ashish Kumar
Vidya Devaiah
SDD GLOBAL SOLUTIONS
#1050 Panchamantra Road
C&D Block, Kuvempunagar
Mysore 570023
Karnataka INDIA
Phone: +91 821 400 1900
info@sddglobal.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| NEWMAN MCINTOSH & HENNESSEY | ) | |
| | ) | Civil Action No. |
|     Plaintiff, | ) | 08-00787 (CKK) |
| | ) | |
|     v. | ) | |
| | ) | |
| THE HONORABLE GEORGE W. BUSH, | ) | |
| President of the United States | ) | |
| ACUMEN LEGAL SERVICES (INDIA) PVT. LTD. | ) | |
| ACUMEN SOLUTIONS, LLC and | ) | |
| JOHN DOE, ESQ. AND JANE DOE, ESQ., | ) | |
| | ) | |
|     Defendants. | ) | |

_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ACUMEN LEGAL SERVICES
(INDIA) PVT. LTD'S MOTION TO DISMISS**

Defendant Acumen Legal Services (India) Pvt. Ltd. respectfully submits this

memorandum of points and authorities in support of its motion to dismiss the

Amended Complaint in this action with prejudice, for lack of subject matter and

personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b) (1) and (2).

**Preliminary Statement**

After the Defendant Indian legal outsourcing company ("Acumen") sent an

unsuccessful solicitation from India to the Plaintiff Maryland law firm ("NMH"),

NMH now is attempting to invoke jurisdiction in the District of Columbia and obtain

sweeping declaratory and injunctive relief against literally millions of unidentified

non-parties throughout the United States and overseas.  Remarkably, the Plaintiff also

seeks injunctive relief specifically against itself.  This is in addition to the above-

mentioned relief it is pursuing against "all United States-based attorneys" (none of

3

whom are named as Defendants), all foreign legal outsourcing companies (only one of which is named as a Defendant), and the President of the United States.

NMH is suing on the basis of speculation, unsupported by even a single alleged example, that the U.S. government is intercepting all or most of the data presumably sent by unidentified U.S. lawyers to mostly unidentified foreign legal outsourcing providers, as part of an anti-terrorism campaign. Citing that speculation, NMH seeks an order from this Court:

(a) issuing declarations in answer to a long series of "questions posed in Counts I-VII" relating to hypothetical waivers of Fourth Amendment rights if data was or will be sent by U.S. lawyers to foreign nationals, and if the data was or will be intercepted by the government;

(b) permanently enjoining NMH itself and unidentified lawyers from sending any data to foreign nationals (regardless of whether the data is confidential or belonging to clients) without advising clients that this will constitute a waiver of Fourth Amendment rights;

(c) permanently enjoining NMH itself and unidentified lawyers from engaging in unspecified conduct, until NMH and the unidentified lawyers obtain written waivers from unspecified persons with respect to "Fourth Amendment rights in the data sought to be transmitted" (sic);

(d) permanently enjoining all "U.S.-based lawyers from electronically transmitting data obtained from non-clients to foreign nationals residing overseas without obtaining the prior consent of such persons" (sic); [1]

(e) requiring "all United States-based attorneys who have electronically transmitted client or non-client data to foreign nationals

---

[1] Although NMH's language purports to seek an injunction requiring consent from the foreign nationals, we assume that NMH meant for the consent to be obtained from the "non-clients."

residing overseas to disclose all such prior transmissions to their clients and non-clients," without regard for whether the data is confidential;

(f) permanently enjoining all foreign legal outsourcing providers "from soliciting business in the United States until such [companies] conspicuously disclose… that the electronic transmission of data from the United States to foreign nationals residing overseas will affect [sic] a waiver of Fourth Amendment protection of such data;" and

(g) requiring the President of the United States to issue protocols within 180 days "that will prevent the waiver of Fourth Amendment rights… and thereby safeguard the attorney-client privilege and client communications  and client confidences and secrets."  (Am. Compl. ¶ 63.)

NMH's requested declaratory and injunctive relief, in addition to having no legal or factual justification, would reach far beyond NMH's obviously intended target, namely, low-cost foreign legal outsourcing companies, which NMH apparently perceives as competition.  The requested relief could have a substantial adverse effect on the operations of all U.S. law firms that have foreign offices, and all U.S. corporations that need to use foreign counsel to transact business abroad.  NMH's requested ruling that any foreign electronic transmission of data between clients and attorneys, or between attorneys, constitutes a waiver of constitutional rights and discovery privileges, would amount to an untenable and unwarranted interference with global commerce.

Moreover, NMH's request for an order requiring all attorneys in the United States, not excluding in-house counsel, (a) to search for every instance in which they ever transmitted any kind of data to any foreign national, and (b) to send a notification regarding the same in every case, presumably to the owner of the data, would amount

5

to one of the most onerous and unjustified burdens ever imposed by any court in a civil proceeding.

In addition, by requesting the Court to issue declarations answering seven hypothetical legal questions, purportedly because the NMH law firm "need[s] guidance," wants "to gain certainty," and "must understand" various points of law to help the firm "in an increasingly globalized legal services environment," NMH seeks relief that is impermissible under well-established principles governing declaratory judgments. (Am. Compl. ¶¶ 42-63.) The NMH lawyers, in essence, are seeking to outsource their legal research tasks to this Court, and secondarily to Acumen, President Bush and their respective counsel.

NMH's Amended Complaint is extraordinary, not only for what it contains, but even more so for what it does not. Nowhere in the Amended Complaint does NMH allege:

- any example of an actual or impending injury to itself or to anyone;

- any actual or impending violation of Fourth Amendment rights;

- any instance of an actual or impending waiver of Fourth Amendment rights;

- any basis for finding a waiver of Fourth Amendment rights, given that NMH does not allege that any Fourth Amendment rights are being violated by the supposed government interception of data;

- any instance of an actual or impending breach or waiver of attorney-client privilege or confidentiality;

- any actual or impending example of government interception of data;

- any actual or impending instance of transmission of data to any foreign nationals by anyone;

- any basis for NMH's speculation that electronic transmissions to foreign nationals are more likely to fall into the hands of the government than are domestic transmissions, which are subject to possible domestic surveillance by law enforcement agencies;

- ▪ any examples of actual or impending conduct within the District of Columbia by any of the parties;

- ▪ any relationship or interaction of any kind among any identified persons or entities in the District of Columbia or anywhere else, except for the unsuccessful solicitation sent by Acumen in India to NMH in Maryland;

- ▪ any monetary dispute or requested monetary relief that could support the "amount in controversy" requirement for NMH's assertion of diversity jurisdiction;

- ▪ any legal or factual basis upon which this court could grant the sweeping declaratory and injunctive relief sought against millions of non-parties, such as every lawyer in the United States, and every foreign legal outsourcing company;

- ▪ any reason why NMH cannot avoid the speculative dangers it alleges by simply (a) continuing to refrain from using foreign legal outsourcing providers, and (b) seeking a protective order in any litigation where NMH believes that its clients' data may be sent by adversaries to such providers;

- ▪ any legal or factual basis upon which the court could require the Executive Branch to "prevent the waiver of Fourth Amendment rights" or "safeguard the attorney-client privilege and client communications and client confidences and secrets;" or

- ▪ any reason why protection is needed beyond the statutory protection already provided by Congress, under which "[n]o otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the [applicable government surveillance provisions] shall lose its privileged character." *See e.g.* 18 U.S.C. § 2517(4); 50 U.S.C. § 1806(a).

In short, as further discussed in the remainder of this memorandum, NMH has not come close to meeting the most basic requirements for standing or personal jurisdiction. Accordingly, NMH's Amended Complaint should be dismissed with prejudice, pursuant to Fed.R.Civ.P. 12(b) (1) and (2), for lack of subject matter and personal jurisdiction.

## BACKGROUND

NMH commenced this action against the Defendants,[2] after receiving a solicitation from Acumen.  (Am. Compl. ¶ 36.)  NMH seeks seven declarations and four injunctions against unidentified non-parties, in addition to the named Defendants. (Am. Compl. ¶ 63.)   In particular, NMH says that it wants to "gain certainty about whether the electronic transmission of data from the United States to Acumen... waives Fourth Amendment protection with respect to the data that is electronically transmitted."  (Am. Compl. ¶ 44.)

NMH alleges the existence of "ECHELON," which NMH contends, "on information and belief," is "an automated global interception and relay system operated by the United States Government and UKUSA Allies" and administered by the NSA. (Am. Compl. ¶ 14.)  NMH further alleges interception of numerous communications, and subsequent storage, searches and sharing of the information gathered through "ECHELON."  (*Id.* ¶¶ 15-19.)

According to NMH, unspecified transmissions of electronic data from unspecified persons in the United States to Acumen, and from Acumen to such persons in the United States, are seized and searched by the United States Government. (*Id*. ¶¶ 26-35).  NMH does not specify any particular transmissions, nor does NMH identify any parties to such transmissions other than Acumen.  NMH also does not allege the nature of the allegedly transmitted data, such as whether the data is confidential.  NMH also does not allege that any violation of the Fourth Amendment has occurred, or is about to occur, nor does NMH allege any examples of actual or impending breaches or waivers of attorney-client privileges.

---

[2]    Texas Defendant Acumen Solutions LLC no longer exists.  Attached to the accompanying Declaration of David M. Lubitz is the Certificate from the Texas Secretary of State, confirming that the company has been terminated, and that it "has complied with the provisions of the Texas Business Organizations Code governing its winding up."

NMH alleges that the unidentified parties "do not obtain from their clients or from their adversaries in litigation, written, knowing waivers of Fourth Amendment protections prior to those attorneys electronically transmitting their data to foreign nationals residing overseas." (*Id.* ¶ 39.)  Accordingly, NMH alleges that "there is a substantial likelihood of damage to United States based clients of legal services [sic] where Fourth Amendment rights are involuntarily waived...." (*Id.* ¶ 41.)

## ARGUMENT

## I.    NMH HAS NO STANDING

Even if the Court were to accept the scenario that NMH alleges in the Amended Complaint, NMH fails to meet the three well-known U.S. Constitutional requirements for standing.  As summarized by the United States Supreme Court:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent" not "conjectural" or "hypothetical."  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

No injury to NMH has been alleged.  In fact, the pleadings contain no allegations of concrete or particularized injury to anyone.  The only allegation of any conduct on the part of Acumen with regard to NMH is as follows:  "NMH has been actively solicited by Acumen... to outsource litigation support services to its offices in India." (Am. Compl. ¶ 36.)  NMH makes no allegation that this conduct by Acumen caused any injury.  NMH requests the Court to issue injunctions and declarations based on conjecture and hypothesis, since there is no actual or imminent injury to be redressed.

In short, NMH has failed to establish any of the elements of legal standing, as explained in further detail below.  For this reason alone, the Amended Complaint should be dismissed with prejudice.

### A. No Injury in Fact

NMH's speculative allegation of "a substantial likelihood of damage" to unspecified U.S. clients (Am. Compl. ¶ 41), due to an alleged possible waiver of attorney-client and Fourth Amendment privileges – the only possible injury alleged anywhere in the Amended Complaint – does not constitute the required "injury in fact."

In a recent Sixth Circuit case, where attorneys and others actually did allege injuries due to alleged NSA wiretapping of their communications with foreigners, and where the attorney plaintiffs sued for alleged violations of the Fourth Amendment, the court held that the plaintiffs had no standing.  *ACLU v. NSA*, 493 F.3d 644, 653-56 (6th Cir. 2007).  In her decision, Chief Judge Batchelder noted that "the alternative possibility remains that the NSA might *not* be intercepting, and might *never* actually intercept, any communications by any of the plaintiffs named in this lawsuit," such that the claimed privacy violations were "not concrete or imminent."  *Id.* at 655-56.  In the case here, where NMH alleges no specific injuries, and no violations of the Fourth Amendment, NMH has even less of an argument for standing than the unsuccessful plaintiffs had in *ACLU v. NSA*.

Moreover, even if NMH had identified any actual or impending examples of the "likely" damage it attempts to rely upon, Congress already has provided statutory protection against exactly that possibility.  NMH fails to consider that all of the relevant surveillance statutes, including the Patriot Act, the Foreign Intelligence Surveillance Act, the Electronic Communications Privacy Act, and the Omnibus

10

Crime and Safe Streets Act, contain provisions ensuring that surveillance, even if illegal, cannot result in a waiver of attorney-client or Fourth Amendment privileges. *See e.g.* 18 U.S.C. § 2517(4) ("No otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character"); 50 U.S.C § 1806(a) ("No otherwise privileged communication obtained in accordance with, or in violation of, the provisions of this subchapter shall lose its privileged character").

It is well-established that "privileges," as understood in the U.S. legal system, not only apply to attorney-client communications, but also include the Fourth Amendment privilege against unreasonable searches and seizures. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996) (regarding the "Fourth Amendment privilege of freedom from unreasonable searches and seizures"); *U.S. v. Tanoue*, 94 F.3d 1342 (9th Cir. 1996) (also referring to the "Fourth Amendment privilege against unreasonable searches and seizures"); *United States v. Field*, 193 F.2d 109 (2d Cir. 1951) (citing the "privilege, under the Fourth Amendment, to be free of any unreasonable searches and seizures").

Additionally, even if NMH had made an effort to identify any actual or impending example of interception of data, it could not have done so, because the U.S. government is under no obligation to disclose any such interception. *See ACLU v. NSA*, 493 F.3d at 653 (due to the State Secrets Doctrine, plaintiffs who asserted violations of Fourth Amendment privileges and breaches of attorney-client confidentiality would never be able to produce evidence that their communications had been intercepted by the NSA).

Accordingly, because of those statutory protections, and independently because NMH's allegation is only of a "likelihood" that some non-specific injury may occur, NMH has failed to meet the first constitutional requirement of standing.

### B. No Causal Relationship

NMH fails to allege that any action on the part of Acumen caused any injury to NMH.   With regard to Acumen's conduct in any direct or even attenuated relation to NMH, the Plaintiff alleges only that Acumen unsuccessfully attempted to solicit business from NMH, and that the possibility exists that one or more of Acumen's attorney clients might be adversaries of NMH, that those attorneys might be sending confidential data to Acumen, that the United States government might be intercepting such data, that the data might include materials that NMH produced to those hypothetical attorneys during discovery, and that the government interception might be deemed to result in waiver of either attorney-client or Fourth Amendment privileges.  Thus, NMH's allegations are bereft of any specific instance in which Acumen has caused anything, much less any damage to NMH.

In *Warth v. Seldin*, 422 U.S. 490, 507 (1975), the Supreme Court upheld the dismissal of a case for lack of standing because "the facts alleged fail to support an actionable causal relationship...."  Acumen respectfully submits that the same result should be granted here.

### C. No Redressability

There has been no actual or imminent injury alleged in the Amended Complaint, such that the declaratory and injunctive relief requested by NMH cannot provide any real or substantial redress, for the simple reason that there is nothing to redress.   As the Supreme Court has held, any dispute must "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising

what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937); *see also MedImmune v. Genentech, Inc.,* 127 S.Ct. 764, 778 (2007).   Here, where no specific injuries are alleged, NMH's request for relief is based entirely upon a hypothetical scenario, such that the action should be dismissed.

It is also noteworthy that NMH has supplied no reason for the Court to conclude that the requested relief would redress the alleged problem, which, if it were to exist, would extend far beyond the situation involving data transmissions to foreign legal service providers.   This is because there is no basis for NMH's speculation that electronic transmissions to foreign nationals are more likely to fall into the hands of the government than are domestic transmissions, which are subject to possible domestic surveillance by law enforcement agencies.

NMH's unwarranted focus on foreign competitors suggests that NMH is not genuinely interested in any comprehensive solution to any problem regarding waiver of attorney-client or Fourth Amendment privileges.   We respectfully submit that this provides yet another reason for dismissal.

### D.  NMH Cannot Sue on Behalf of Others

Another judicially recognized requirement for standing is that the plaintiff must be the party injured and cannot file suit on behalf of other parties.   "[T]he plaintiff generally must assert its own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. at 499.

NMH makes a conclusory allegation that certain unnamed clients may be injured by an alleged involuntary waiver of their Fourth Amendment rights.   (Am. Compl. ¶ 56).   However, these unnamed clients are not parties to the suit, and NMH

has no standing to sue on their behalf, even if NMH's pleadings included more than mere speculation as to those injuries.

For all of the above reasons, the Amended Complaint should be dismissed, without leave to amend.  *See Long Term Care Pharmacy Alliance v. United Health Group, Inc.*, 498 F. Supp.2d 187, 196 (D.D.C. 2007) (where plaintiffs "lack standing, the Court lacks subject matter jurisdiction over their claims," such that the complaint was "dismissed with prejudice"); *Arnold v. District of Columbia*, 211 F. Supp.2d 144, 146 (D.D.C. 2002) ("conclusory averment of subject matter jurisdiction" not enough to negate lack of standing, such that the action was dismissed "with prejudice").

## II.     THERE IS NO BASIS FOR DIVERSITY OR FEDERAL QUESTION JURISDICTION

NMH fails to allege that "the matter in controversy exceeds the sum or value of $75,000," as required for diversity jurisdiction under 28 U.S.C. 1332(a).[3] Instead, NMH alleges that "the value of the services provided by Acumen Legal Services, Ltd., Pvt. Exceeds $75,000."  (Am. Compl. ¶ 6.)  However, the value of Acumen's services is nowhere "in controversy."  Taking into account all of NMH's allegations in its Amended Complaint, there is simply no monetary dispute.  NMH does not seek any monetary relief or damages against anyone.

There also is no basis for federal question jurisdiction.  Instead, NMH is seeking declarations and injunctions regarding hypothetical issues born out of NMH's imagination.

NMH's conclusory allegation that there is federal question jurisdiction does not make it so. "The burden is on the plaintiff to demonstrate that a federal question indeed exists; mere conclusory assertions of a federal question are insufficient."

---

[3]  NMH alleges jurisdiction under 28 U.S.C.A. 1336(a) (Am. Compl. ¶ 6), which provides authority "to enforce, in whole or in part, any order of the Surface Transportation Board."

*Dixon v. Ford*, Civ. Action No. 96-1012 (RCL/PJA), 1997 WL 16072 at *3, (D.D.C. Jan. 13, 1997), *citing Jackson v. Strayer College*, 941 F.Supp. 192, 195 (D.D.C. 1996); *Lake Lansing Special Assessment Protest Ass'n v. Ingham County Bd. of Commissioners*, 488 F. Supp. 767, 770 (W.D. Mich. 1980); *McCartney v. West Virginia*, 156 F.2d 739, 741 (4th Cir. 1946) ("Mere references to the federal Constitution, laws or treaties and mere assertions that a federal question is involved are not sufficient to confer jurisdiction. *Starin v. New York*, 115 U.S. 248; *Lambert Run Coal Co. v. Baltimore & Ohio R. Co.*, 258 U.S. 377 (1922). The federal courts have been vigilant to protect their jurisdiction against cases in which the alleged federal question is purely fictitious.").

In this case, although NMH purports to assert a federal case regarding alleged waivers of Fourth Amendment rights, there can be no basis for finding such a waiver, given that NMH does not allege any actual or threatened Fourth Amendment violation. Within the four corners of NMH's pleadings, there is no allegation that the government is engaging in any unreasonable searches and seizures prohibited by the Fourth Amendment. Simply put, if there are no Fourth Amendment rights in jeopardy, there can be no question of waiver.

Accordingly, NMH's conclusory assertions of diversity and federal question jurisdiction are contradicted by the remainder of its Amended Complaint, providing yet another reason why this case should be dismissed. *See Tozzi v. E.P.A.*, 148 F. Supp.2d 35, 41 (D.D.C. 2001) ("a conclusory averment of subject matter jurisdiction negated by other allegations in the pleading should result in dismissal").

## III.    THERE IS NO PERSONAL JURISDICTION OVER ACUMEN, DOE DEFENDANTS, OR NON-PARTIES

"To establish personal jurisdiction over a non-resident, a court must engage in a two part inquiry: a court must first examine whether jurisdiction is applicable under

the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. v. BellSouth Corp.,* 199 F.3d 1343, 1347 (D.C. Cir. 2000)*.*

The D.C. Circuit has noted that the bases for long-arm jurisdiction in this District are as follows:

> To establish specific personal jurisdiction under the District long-arm statute, [the plaintiff] would have to demonstrate either (1) that its claims arose from [the defendant's] transacting business in the District of Columbia . . .; or (2) that [the defendant] caused it tortious injury in the District by its conduct in the District . . .; or (3) that [the defendant] caused it tortious injury in the District by its conduct outside the District and that [the defendant] "regularly does or solicits business" in the District, "engages in any other persistent course of conduct" there, or "derives substantial revenue" from goods used or services rendered.

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005).

The constitutional requirements in this Circuit have been held to be "co-extensive" with a D.C. general personal jurisdictional provision, D.C. Code § 13-334(a), which authorizes D.C. courts to "exercise 'general jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is doing business in the District." *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp.2d 64, 74 (D.D.C. 2004)*; quoting Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 509 (D.C. Cir. 2002). This "doing business" test "is whether [the defendant's] contacts with the District have been 'so continuous and systematic that it could foresee being haled into court in the District of Columbia.'" *Newmont,* 346 F. Supp.2d at 74.

In relation to Acumen, the two "Doe" Defendants, and the possibly millions of non-parties against whom NMH seeks relief, NMH has failed to meet any of the above requirements for personal jurisdiction.

**A.  No Claims Arise from Transaction of Business in D.C.**

As discussed in Point I above, NMH has failed to allege any injury caused by the conduct of Acumen.  The alleged solicitation from Acumen to NMH were between an Indian company and a Maryland law firm.  (Am. Compl. at 3-5).  NMH does not allege that any of this conduct occurred in the District of Columbia.

Regarding any conceivable injuries caused by any transactions of the unidentified "Doe" attorneys, NMH's allegations are entirely speculative, as also discussed above.  NMH alleges no specific facts or knowledge that (a) those attorneys are adversaries of NMH, (b) they are sending confidential data to Acumen, (c) the government is intercepting that data, (d) the data includes materials that NMH produced to those attorneys during discovery, or (e) the government interception has resulted in a waiver of either attorney-client or Fourth Amendment privileges.

NMH's boilerplate assertions of personal jurisdiction (Am. Compl. ¶ 7) are no substitute for the specific jurisdictional allegations required by this Court, and by the D.C. Circuit.  For example, in a case where a plaintiff alleged that foreign defendants entered into a contract under which visa processing services were to be provided in this District, and that the foreign defendants "engaged in conferences, discussions and meetings in the District" – allegations more specific than those of NMH – this Court dismissed the complaint, citing D.C. Circuit precedent and holding that such allegations were not specific enough to support personal jurisdiction:

> As for the...allegations…that Defendants entered into an agreement in the District whereby services were to be supplied in the District, and that they engaged in conferences, discussions and meetings in the District - Plaintiff has offered no factual basis to support these assertions. Neither of these allegations suggest when, why and with whom these activities took place. They are conclusory statements that "do not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction." *First Chicago Int'l v. United Exchange Co.,* 836 F.2d at 1378. Plaintiff has failed to allege contacts by the Defendants with the District of Columbia with the

specificity required, *id.* at 1378-79; *Sunlite, Inc. v. BFG Bank AG,* 849 F.Supp. at 75, or, indeed, any factual basis sufficient for the exercise of personal jurisdiction over the Defendants. *Crane v. New York Zoological Soc.,* 894 F.2d at 456.

*Novak-Canzeri v. HRH Prince Turki Bin Abdul Aziz Al Saud,* 864 F. Supp. 203, 206 (D.D.C. 1994);  *see also FC Inv. Group LC v. IFX Markets, Ltd.*, 479 F.Supp.2d 30, 35 (D.D.C 2007) (plaintiffs must "bear the burden of establishing personal jurisdiction," and "[i]n order to meet their burden, plaintiffs must allege specific facts on which personal jurisdiction can be based; they cannot rely on conclusory allegations"); *Arista Records, Inc. v. Sakfield Holding Co.,* 314 F.Supp.2d 27, 30 (D.D.C.2004) ("[a] plaintiff must establish a factual basis for the court's exercise of personal jurisdiction ... [by] alleg[ing] specific facts connecting the defendant with the forum"); *McManus v. Washington Gas Light Co.,* 1991 U.S. Dist. LEXIS 14539 (D.D.C. Oct. 15, 1991) ("'Bald speculation'… does not meet the plaintiffs' burden of making a *prima facie* showing of jurisdictional facts. *See Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 787 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1210 (1984)").

In the case here, NMH alleges no specific facts regarding any conduct in this District.  Accordingly, NMH has failed to establish any claims arising from the transaction of business in this District, as would be required under the first prong of D.C. statutory long-arm jurisdiction.

**B.  No Tortious Injury in the District Was Caused By Defendants' Conduct in the District**

Again, NMH has alleged no specific injuries in the District of Columbia, nor has it alleged any specific conduct in the District that could have caused those unspecified injuries.  Accordingly, NMH has failed to allege any examples of injuries caused in this District by conduct in this District.  Therefore NMH has failed to meet the specificity requirements in this Circuit, such that it cannot rely upon the second

18

basis for long-arm jurisdiction. *See Novak-Canzeri*, 864 F. Supp. at 206; *FC Inv. Group LC*, 479 F. Supp.2d at 35; *Arista Records*, 314 F. Supp.2d at 30; *McManus*, 1991 U.S. Dist. LEXIS 14539; *Naartex*, 722 F.2d at 787.

### C.  No Injury in D.C. Was Caused By Conduct Outside D.C.

Once again, NMH has alleged no specific injuries in the District of Columbia, nor has it alleged any specific conduct outside (or inside) the District that could have caused those unspecified injuries.  Accordingly, NMH has failed to allege any examples of injuries caused in this District by conduct outside this District.  Therefore NMH again has failed to meet the specificity requirements in this Circuit, such that it cannot rely upon the third basis for long-arm jurisdiction.  *See Novak-Canzeri*, 864 F. Supp. at 206; *FC Inv. Group LC*, 479 F.Supp.2d at 35; *Arista Records*, 314 F.Supp.2d at 30; *McManus*, 1991 U.S. Dist. LEXIS 14539; *Naartex*, 722 F.2d at 787.

### D.  There Was No "Doing Business" that Would Allow General Personal Jurisdiction

The District of Columbia general personal jurisdictional provision, D.C.Code § 13-334(a), which has been deemed co-extensive with federal constitutional requirements of due process, allows general jurisdiction "over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is doing business in the District.'" *Newmont*, 346 at 74, *quoting Gorman,* 293 F.3d at 509.  This "doing business" test "is whether [the defendant's] contacts with the District have been 'so continuous and systematic that it could foresee being haled into court in the District of Columbia.'" *Newmont,* 346 F. Supp. 2d at 74.

"It is plaintiff's burden to establish the personal jurisdiction over the defendant on a factual basis, identify specific facts to prove that the defendant engaged in purposeful activity such that they utilized the benefits and protections of the District of Columbia's laws." *Novak-Canzeri,* 864 F. Supp. at 205.

With regard to Acumen, the two "Doe" Defendants, and the possibly millions of non-parties against whom NMH seeks relief, NMH has failed to allege any specific conduct at all in relation to this District, much less has NMH alleged any "systematic and continuous" contacts or "purposeful activity such that they utilized the benefits and protections of the District of Columbia's laws." In *Newmont,* this Court recognized that even in a situation where a foreign defendant had offices and employees in the District, this was not enough to satisfy the above test. *Newmont,* 346 F.Supp.2d at 74-75 (*quoting Fandel v. Arabian Am. Oil Co.,* 345 F.2d 87, 88-89 (D.C. Cir. 1965) ("the defendant's District of Columbia six-room office where five employees worked did not alone constitute 'doing business' in the District").

Here, NMH makes no specific allegations regarding Acumen "doing business" in this District. As for the Doe Defendants and non-parties implicated in this suit, NMH has not even identified them or made any specific allegations about their conduct. Accordingly, NMH has not come near to meeting the pleading requirements for general personal jurisdiction.

### E. There Is No Jurisdiction Over Acumen Solutions, LLC

There is no requisite "case or controversy" between NMH and Acumen Solutions, LLC, a non-existent entity. *See Warth v. Seldin*, 422 U.S. at 498 ("[i]n its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III"). The fact that the company apparently existed when this action began is of no consequence. First, "standing is an aspect of the case or controversy requirement, which must be satisfied 'at all stages of review.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 67 (1997). Second, there can be no serious allegation that the company sought dissolution to avoid liability, since NMH seeks no

damages against this company or anyone.  Last, the attached exhibits are indisputable

evidence of this company's dissolution.  *Williams v. Conner*, 522 F. Supp.2d 92, 96-

97 (D.D.C. 2007) ("[w]hen deciding a motion to dismiss for lack of subject matter

jurisdiction under Rule 12(b)(1)…, the Court… may consider materials beyond the

pleadings.")

### F.    Relief Against Non-Parties Would Violate Due Process

NMH is pursuing injunctive and declaratory relief against "all United States-

based attorneys" (none of whom are named as Defendants), and all foreign legal

outsourcing companies (of which only Acumen is named as a Defendant) (Am.

Compl. ¶ 63).  Acumen  respectfully submits that NMH cannot be allowed to obtain

such relief against persons who are not parties to this action and who have no actual

notice of it.

For example, Fed.R.Civ.P. 65(d), which is applicable to "every injunction,"

states that injunctions can be granted only against "the following who receive actual

notice of it by personal service or otherwise:  (A) the parties; (B) the parties' officers,

agents, servants, employees, and attorneys; and (C) other persons who are in active

concert or participation with anyone described [above]."  *See R.M.S. Titanic, Inc. v.

Haver*, 171 F.3d 943, 957-58 (4th Cir. 1999) ("a party cannot obtain injunctive relief

against another without first obtaining *in personam* jurisdiction over that person or

someone in legal privity with that person" – even where a non-party indisputably "had

actual notice of [a] motion for an injunction…. , this does not alone meet the formal

requirements for obtaining personal jurisdiction").  Similarly, declaratory relief

cannot be obtained against non-parties.  *See, e.g., Athridge v. Aetna Cas. and Sur. Co.*,

Civ. Action No. 96-2708 (RMU/JMF), 2006 WL 2844690 at *8 (D.D.C. Sept. 29,

2006) (non-party "not bound by the declaratory judgment action because they simply were not a party to that action").

To allow NMH to obtain its requested relief against non-parties would lead to results that would be at once absurd and onerous, especially if those non-parties have no opportunity to be heard. NMH's request for a ruling that any foreign electronic transmission of data between clients and attorneys, or between attorneys, constitutes a waiver of constitutional rights and discovery privileges obviously would have a substantial adverse effect on the operations of all U.S. law firms that have foreign offices, and all U.S. corporations that need to use foreign counsel to transact business abroad.

Moreover, NMH's request for an order requiring all attorneys in the United States, not excluding in-house counsel, (a) to search for every instance in which they ever transmitted any kind of data to any foreign national, and (b) to send a notification regarding the same in every case, presumably to the owner of the data, would amount to one of the most onerous and unjustified burdens ever imposed by any court in a civil proceeding, and even more so if the afflicted attorneys are never afforded any opportunity to be heard in opposition to this draconian requested order.

Accordingly, this action should be dismissed for the above reasons alone.

### G. Because NMH Has Made No *Prima Facie* Showing of Jurisdiction, Dismissal Should Be Without Leave to Replead

As this Court has held, "[i]t is not error to deny jurisdictional discovery when the record indicates there is nothing to be gained from the effort." *Fasolyak v. The Cradle Society, Inc.*, Civ. Action No. 06-01126 (TFH), 2007 WL 2071644 at *10 (D.D.C. July 19, 2007); *see also Goodman Holdings v. Rafidain Bank,* 26 F.3d 1143, 1147 (D.C. Cir. 1994) ("we do not see what facts additional discovery could produce that would affect our jurisdictional analysis….").

In the case here, where NMH already has exercised its opportunity to amend the complaint, and where it continues to be unable to allege any specific facts to support jurisdiction, this action should be dismissed without leave to amend yet again. *See, e.g., Simpson, v. Socialist People's Libyan Arab Jamahiriya*, 529 F. Supp. 2d 80, 85 (D.D.C. 2008) ("in squandering her prior chance to amend her complaint, the plaintiff demonstrates that granting an additional opportunity to amend would be futile").

## <u>CONCLUSION</u>

For all of the above reasons, the Court should dismiss NMH's Amended Complaint with prejudice and without leave to amend, for lack of subject matter and personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b) (1) and (2).

Dated: August 14, 2008

Respectfully submitted,

*/s/* **David M. Lubitz**
DAVID M. LUBITZ
Law Office of David M. Lubitz
210 5th Street, NE
Washington D.C. 20002
(202) 492-4273
david.lubitz@verizon.net
D.C. Bar # 457558

Attorney for Defendant
Acumen Legal Services
(India) Pvt. Ltd.

*On the Brief:*

Abhay Shankar Babu
Abhijith Chandrasekhariah
Ashish Kumar
Vidya Devaiah
SDD GLOBAL SOLUTIONS
#1050 Panchamantra Road
C&D Block, Kuvempunagar
Mysore 570023
Karnataka INDIA

Phone: +91 821 400 1900
info@sddglobal.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
NEWMAN MCINTOSH & HENNESSEY ) 
                                )
    Plaintiff, )
                                  )
    v. )        Civil Action No. 08-00787 (CKK)
                                  )
THE HONORABLE GEORGE W. BUSH, )
President of the United States, )
ACUMEN LEGAL SERVICES (INDIA) PVT. LTD., )
ACUMEN SOLUTIONS, LLC and )
JOHN DOE, ESQ. AND JANE DOE, ESQ., )
                                  )
    Defendants. )
———————————————————————— )

### DECLARATION OF DAVID M. LUBITZ

I, David M. Lubitz, hereby declare as follows:

1. My name is David M. Lubitz. I am counsel of record for Defendant Acumen Legal Services (India) Pvt. Ltd. in the above-captioned action.

2. I submit this declaration in connection with my client's motion to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure.

3. Attached hereto is a Certificate from the Texas Secretary of State, confirming that Texas Defendant Acumen Solutions LLC has been terminated, and that it "has complied with the provisions of the Texas Business Organizations Code governing its winding up."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 14, 2008

                                         **/s/ David M. Lubitz**
                                         David M. Lubitz



Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Phil Wilson
Secretary of State

# Office of the Secretary of State

## CERTIFICATE OF FILING
## OF

ACUMEN SOLUTIONS LLC
File Number: 800859082

The undersigned, as Secretary of State of Texas, hereby certifies that the Certificate of Termination for the above named entity has been received in this office and has been found to conform to the applicable provisions of law.

ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the secretary by law, hereby issues this certificate evidencing filing effective on the date shown below.

Dated: 06/03/2008

Effective: 06/03/2008



Phil Wilson
Secretary of State

*Come visit us on the internet at http://www.sos.state.tx.us/*

Phone: (512) 463-5555       Fax: (512) 463-5709       Dial: 7-1-1 for Relay Services
Prepared by: Laura Canales       TID: 10307       Document: 217559290002

| Form 651<br>(Revised 01/06)<br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512 463-5709<br>**Filing Fee: $40** | <br>**Certificate of Termination<br>of a<br>Domestic Entity** | This space reserved for office use.<br><br>**F I L E D**<br>In the Office of the<br>Secretary of State of Texas<br><br>JUN 03 2008<br><br>**Corporations Section** |
| --- | --- | --- |

### Entity Information

The name of the domestic entity is:

ACUMEN SOLUTIONS LLC

The entity is organized as a    LIMITED LIABILITY COMPANY    under the laws of Texas.

The date of formation of the entity is:  08/17/2007

The file number issued to the filing entity by the secretary of state is:  0800859082

### Governing Persons

The names and addresses of each of the filing entity's governing persons are:

**NAME OF GOVERNING PERSON** (Enter the name of either an individual or an organization, but not both.)

IF INDIVIDUAL

| NAVEENA | | TALAPALLIKOTTURI | |
| --- | --- | --- | --- |
| First Name | M.I. | Last Name | Suffix |

OR

IF ORGANIZATION

Organization Name

**ADDRESS OF GOVERNING PERSON**

| 1100 BERING DR # 231 | HOUSTON | TX | USA | 77057 |
| --- | --- | --- | --- | --- |
| Street or Mailing Address | City | State | Country | Zip Code |

**NAME OF GOVERNING PERSON** (Enter the name of either an individual or an organization, but not both.)

IF INDIVIDUAL

| | | | |
| --- | --- | --- | --- |
| First Name | M.I. | Last Name | Suffix |

OR

IF ORGANIZATION

Organization Name

**ADDRESS OF GOVERNING PERSON**

| | | | | |
| --- | --- | --- | --- | --- |
| Street or Mailing Address | City | State | Country | Zip Code |

| NAME OF GOVERNING PERSON (Enter the name of either an individual or an organization, but not both.) | | | | |
|---|---|---|---|---|
| IF INDIVIDUAL | | | | |
| First Name | M.I. | Last Name | | Suffix |
| IF ORGANIZATION | | | | |
| Organization Name | | | | |

| ADDRESS OF GOVERNING PERSON | | | | |
|---|---|---|---|---|
| Street or Mailing Address | City | State | Country | Zip Code |

| NAME OF GOVERNING PERSON (Enter the name of either an individual or an organization, but not both.) | | | | |
|---|---|---|---|---|
| IF INDIVIDUAL | | | | |
| First Name | M.I. | Last Name | | Suffix |
| IF ORGANIZATION | | | | |
| Organization Name | | | | |

| ADDRESS OF GOVERNING PERSON | | | | |
|---|---|---|---|---|
| Street or Mailing Address | City | State | Country | Zip Code |

## Event Requiring Winding Up

The nature of the event requiring winding up is:  NO ACTIVITY

## Completion of Winding Up

The filing entity has complied with the provisions of the Texas Business Organizations Code governing its winding up.

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing.  The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time.  The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

Form 651                                          5

## Tax Certificate

☒ Attached hereto is a certificate from the comptroller of public accounts that all taxes under title 2, Tax Code, have been paid.

☐ The entity is a domestic professional association or limited partnership and is not required to provide a certificate of account status under the provisions of the Texas Business Organizations Code.

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date:  6/2/08

Managing Member

Signature and title of authorized person(s) (see instructions)

Form 651

6